IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JUDY A HARRISON,                        §
                                        §
        Plaintiff,                      §
VS.                                     §        CIVIL ACTION NO. 4:17-CV-1951
                                        §
CHIPOLBROK AMERICA, INC,                §
                                        §
        Defendant.                      §

## <u>ORDER</u>

Plaintiff Judy Harrison ("Harrison" or "Plaintiff") has sued Defendant Chipolbrok America, Inc. ("Chipolbrok" or "Defendant") for employment discrimination on the basis of age. Before the Court is Defendant's Motion for Summary Judgment (Doc. No. 18). Plaintiff has filed a response (Doc. No. 19) and each party has filed a subsequent reply (Doc. Nos. 22, 26).

For the reasons set forth below, the Court hereby **DENIES** Defendant's Motion for Summary Judgment.

## I.    Material Facts

Chipolbrok America is a Chinese-Polish Joint Stock Shipping company. As a joint-venture, the company is structured to have two co-Presidents, one a Polish national citizen and the other a Chinese national citizen. (Doc. No. 1 at 2). Prior to the fall of 2016, the company was subdivided into an Eastbound Sector (which imported goods through the United States from Asia) and a Westbound Sector (which exported goods from the United States to Asia).

Plaintiff is a former employee of Chipolbrok. Plaintiff began working at Chipolbrok in 2007, when she was fifty-five years old, as a Customer Service Manager on the "Commercial Team." (Doc. Nos. 1 at 2; 19, Ex. B). Plaintiff alleges that when she was hired, she assisted both sectors, but that before her termination, her position had shifted such that she worked primarily with the Westbound Sector.[1]

For most of Plaintiff's time at Chipolbrok, four people (including Plaintiff) worked on the Westbound commercial team, and three people worked on the Eastbound commercial team. (Doc. No. 18, Ex. B). During Plaintiff's time at the company, Daniel Zhou ("Zhou") was the Chinese co-President, followed by Yanhua "Stella" Ge ("Ge"). Mark Orent ("Orent") was the Polish co-President for most of Plaintiff's time with the company, followed by Slawek Piankowski ("Piankowski") (who only had a few weeks, if any, overlap in employment with Plaintiff).[2] The parties do not dispute that both co-Presidents had to agree on all personnel decisions. Plaintiff also had multiple supervisors during her nine years with the company including: Malgorzata Pawlokowska who was the Westbound Manager, and then Clifford Kuhfeld ("Kuhfeld"), who was the Commercial Manager.

In 2015, Plaintiff was diagnosed with and treated for cancer. Just before Plaintiff's diagnosis, Chipolbrok contemplated hiring another individual to assist with the heavy workload on the Westbound side. Plaintiff claims that she and an Eastbound Sector employee, Reuby Olvera, requested that a new employee be added to the team because they needed assistance with documentation for both the Eastbound and Westbound Sectors. (Doc. No. 19, Ex. A at 96).

---

[1] Plaintiff does not provide evidence indicating that there was a Customer Service Manager dedicated solely to the Eastbound Team, but alleges that she would help out on the Eastbound side when necessary.

[2] Piankowski replaced Orent during/directly following the reorganization. The parties do not dispute that both Polish co-Presidents (plus the Chinese co-President) were involved in "reorganization plans and personnel decisions" in 2016. (Doc. No. 18 at 8).

Plaintiff's diagnosis apparently solidified the fact that the Westbound side would need more assistance because as Plaintiff began treatment, she also began working from home. In March of 2015, Chipolbrok hired Veronica Rodriguez to assist with documentation duties for both the Eastbound and Westbound commercial teams.

In 2016, after experiencing a downturn in Westbound business, Chipolbrok decided to reorganize and run its team more leanly. The Westbound business declined from 495 bookings in 2014, to 441 bookings in 2015, to 150 bookings in 2016, and finally, to 42 bookings in 2017. In 2014 Chipolbrok earned $172,974 in net profit and in 2016 experienced a loss of $928,994. Chipolbrok alleges that, as a result, it decided to terminate the employment a total of eight workers in two rounds of lay-offs. Plaintiff and five others had their employment terminated in October of 2016, followed by two more terminations in June of 2017. This left Chipolbrok with a total of nine employees (plus two co-Presidents).

Chipolbrok describes these lay-offs as a reorganization. After laying off the eight employees, Chipolbrok claims that it merged the Eastbound and Westbound Commercial Teams into a single "U.S." Commercial Team because Westbound services were indefinitely suspended. Chipolbrok also alleges that after reorganization, five employees remained on the U.S. Commercial Team.

Pre-reorganization, Mark Roberts ("Roberts") worked for the Commercial Team in Eastbound Sector sales. Roberts was promoted to Manager of the reorganized U.S. Commercial Team. In this role, Roberts came up with a reorganization plan that would have kept Plaintiff on the Commercial Team as a Shipping Associate, a position that George Amos ("Amos")—a twenty-seven year old—held. (Doc. No. 15, Ex. F). The co-Presidents did not ultimately adopt Roberts's recommendation and instead terminated Plaintiff and kept Amos as the Shipping Associate. The

other three U.S. Commercial Team members included Malgorzata Pawlokowska (now the Chartering Manager), Karla Montalvan (Sales), and Reuby Olvera (Documentation).

After her termination, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission in December of 2016. After receiving her right-to-sue letter, Plaintiff filed this suit claiming that Defendant violated the Age Discrimination in Employment Act (ADEA) and the Texas Commission on Human Rights Act (TCHRA).

## II.      Standard of Review

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the Court should not grant the motion. *Celotex*, 477 U.S. at 321–25.

The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248.

At the summary judgment stage, the question is whether there is a genuine issue of material fact regarding whether Chipolbrok discriminated against Plaintiff on the basis of age. See FED. R.

CIV. P. 56(a); *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001). Proof of discrimination can be through either direct or circumstantial evidence. *Enguita v. Neoplan USA Corp.*, No. Civ. A. B-04-121, 2005 WL 3279280, at *3 (S.D. Tex. Dec. 2, 2005) (citing *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 40 (5th Cir. 1996)). Direct evidence "includes any statement or written document showing a discriminatory motive on its face." *Portis v. First Nat. Bank of New Albany.*, 34 F.3d 325, 329 (5th Cir. 1994). Where a plaintiff's case is based on circumstantial evidence, the Court applies the *McDonnell Douglas* burden-shifting framework. *Id.* at *4 (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973).

Here, Plaintiff arguably has direct evidence of discrimination. As the Court discusses below, Plaintiff has evidence that Ge, the Chinese co-President of the company, made a discriminatory statement about Plaintiff's age and Ge's desire to terminate Plaintiff's employment. "[D]irect evidence of discrimination is evidence which, if believed, would prove the existence of a fact *without any inferences*." *Nichols*, 81 F.3d at 40 (emphasis in the original). Courts have explained that such evidence "is rare." *Id.* Since the parties agree that both co-Presidents must reach a consensus on personnel decisions (and Plaintiff only has evidence of a discriminatory statement from one of the acting co-Presidents), and since some of Plaintiff's additional evidence is circumstantial (requires inferences), the Court will apply the traditional burden-shifting analysis.

Under the *McDonnell Douglas* burden-shifting approach, Plaintiff first has the burden to establish a prima facie case of discrimination. *See Rachid*, 376 F.3d at 312. If Plaintiff establishes a prima facie case, then the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* If Defendant does so, Plaintiff must then show that Defendant's "stated

reason is pretextual and that the true reason is unlawful discrimination." *Gerdin v. CEVA Freight, L.L.C.*, 908 F. Supp. 2d 821, 827 (S.D. Tex. 2012).

"Evidence of pretext will permit a trier of fact to infer that the discrimination was intentional." *Id.* "In the summary judgment setting, the plaintiff's burden is not to persuade the court that defendant's explanation is incorrect but, rather, to raise a genuine issue of material fact for trial by presenting evidence that both (1) rebuts the defendant's nondiscriminatory reason, and (2) creates an inference that impermissible discrimination was a determinative factor in the challenged employment decision." *Id.* (citing *E.E.O.C. v. Tex. Instruments Inc.*, 100 F.3d 1173, 1180–81 (5th Cir. 1996)). "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

## III.   Discussion

### A. Defendant's Objection to the Summary Judgment Evidence

Defendant objects to certain portions of the Declaration of Clifford Kuhfeld as hearsay. Specifically, Defendant objects to paragraphs 5 and 11 in which Kuhfeld states that on two separate occasions Ge told him that she wanted to fire Harrison because Harrison was too old, too sick, and costing Chipolbrok too much in medical expenses.

Federal Rule of Evidence 801(d)(2) notes that a statement is not hearsay if "[t]he statement is offered against a party and . . . (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." In order for a statement to qualify as a statement of a party opponent, it must be one that was "made by a person whom the party authorized to make

a statement on the subject." FED. R. EVID. 801(d)(2)(C). Thus, the question is whether Ge is authorized to speak on behalf of Chipolbrok. *Thomas v. Atmos Energy Corp.*, 223 F. App'x 369, 374 (5th Cir. 2007) (absent showing that the employee was authorized to make a statement, the testimony is inadmissible hearsay).

Here, Plaintiff identifies Ge as the co-President of Chipolbrok America and states that she was primarily responsible for hiring and firing employees (i.e., she and the other co-President had to agree on personnel decisions). Thus, the statements were (1) by the party's agent or servant (Ge); (2) concerning a matter within the scope of the agency or employment (terminating employment); and (3) made during the existence of the relationship (while Ge was the co-President of Chipolbrok). FED. R. EVID. 801 (d)(2). As such, the statements are admissions of a party-opponent and therefore, do not constitute hearsay. The Court overrules Defendant's objection to this summary judgment evidence.

## B. ADEA Claims

The ADEA makes it unlawful for "an employer. . . to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). Under the ADEA, the protected class includes persons forty years or older. 29 U.S.C. § 631. To prove a violation, a plaintiff must prove intentional discrimination. Absent direct evidence, the plaintiff can create a rebuttable presumption of discrimination by presenting a prima facie case. A plaintiff demonstrates a prima facie case by showing that (1) she was discharged, (2) she was qualified for the position, (3) she was within the protected class, and (4) she was either (a) replaced by someone outside the protected class, (b) replaced by someone younger, or (c) otherwise discharged because of her age. *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 149 (5th Cir. 1995) (citing *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993). "The third alternative of this last element applies in circumstances

where the plaintiff is not replaced." *Meinecke v. H & R Block of Hous.*, 66 F.3d 77, 83 (5th Cir. 1995) (citing *Armendariz*, 58 F.3d at 150).

Once a plaintiff demonstrates a prima facie case, the burden of production shifts to the defendant to establish a legitimate, nondiscriminatory reason for its decision. *Id.* Once a defendant meets this burden, "the presumption dissolves and the plaintiff must prove by a preponderance of the evidence that the employer's articulated reason is but a pretext for age discrimination." *Id.* (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993)). "Generally, to establish a prima facie case, a plaintiff need only make a very minimal showing." *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985), abrogated on other grounds by *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993).

### i. Reduction in Force

Defendant contends that this was a reduction in force: Chipolbrok suspended the entire Westbound Sector, and reorganized its operations for legitimate business reasons. Six Westbound Sector employees, including Plaintiff, were terminated, and two more were terminated in a second round of lay-offs. Plaintiff does not appear to dispute that this is a reduction in force case, but points out that while "a [reduction in force] can be a legitimate reason for termination, the fact that younger, less qualified employees were retained during a reduction in force, as was the case here, is sufficient to support a prima facie case." (Doc. No. 19 at 3).

Plaintiff also argues that the Defendant created new positions when it "merged" certain job positions. (Doc. No. 19 at 10). For example, Plaintiff asserts that the new "Shipping Associate" position requires duties that were not required by the position before the lay-offs in 2016; Plaintiff

8

provides no evidence for this assertion.[3] Defendant responds saying that no new positions were created; rather, the company merged the Eastbound and Westbound Sectors into a single "U.S. Sector," and with the Westbound services suspended indefinitely, the reorganized team serviced only the Eastbound business. (Doc. No. 18 at 9). Defendant alleges that "[t]he reorganized Commercial Team was staffed by three employees of the previous Eastbound Commercial Team, the former manager of the Westbound Team, and one remaining sales employee." (*Id.*).

The Court finds that Chipolbrok America's termination of the Westbound Sector employees was in fact a reduction in force. It is undisputed that Chipolbrok terminated Westbound services, which remain inactive, for legitimate business reasons. There is no evidence to the contrary. Three employees from the Eastbound Sector and one employee from the Westbound Sector merged to form the U.S. Commercial Team; Roberts, formerly in Eastbound Sales, was promoted to manager and was replaced by Karla Montalvan, formerly in Westbound Sales. Chipolbrok terminated all remaining Westbound Sector employees, regardless of age. These facts show that Chipolbrok carried out a reduction in force. *See Meinecke*, 66 F.3d at 84 (finding a "reduction in force" where the plaintiff's office was closed, the plaintiff's role was eliminated, and plaintiff's "duties were incorporated into the job responsibilities of other employees."); *Armendariz*, 58 F.3d at 149–50 (finding a "reduction in force" where the plaintiff's position was eliminated); *Enguita*, 2005 WL 3279280, at *5 n.5 ("This case is a reduction-in-force case, because the discharge of Plaintiff stemmed from the closing of the entire Brownsville plant, not just Plaintiff's individual discharge.").

---

[3] Plaintiff states that Defendant failed to produce a job description for this position that was dated pre-2016. Plaintiff provides one undated Shipping Associate job description, and one dated November 2017. Notably, the duties listed on these job descriptions are different, a point that will be discussed further below.

### ii.    The Applicable Prima Facie Case

The parties do not dispute the first two elements required to prove a prima facie case—Plaintiff was discharged and Plaintiff was within the protected age class. Directing its argument to the third and fourth elements, Defendant contends that "Plaintiff cannot establish that she was qualified for an open position, suffered an adverse employment action because of her age, or that she was replaced by someone outside of her protected class." (Doc. No. 18 at 3).

The Court finds that Plaintiff's evidence is sufficient to make the required "very minimal showing." *Thornbrough*, 760 F.2d at 639. Viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in Plaintiff's favor, the evidence shows not only that Defendant terminated Plaintiff when she was sixty-four years old, but also that Defendant avoided "terminating" younger, less-experienced employees in substantially similar positions. Plaintiff argues that George Amos, a twenty-seven year old, less experienced employee who worked as a Shipping Associate was retained while she was terminated. As described further below, regarding the third element, Plaintiff argues that she was qualified for the Shipping Associate position. She also argues that a question of fact remains concerning the fourth element—that she was replaced with someone outside of the protected class or was otherwise discharged because of her age.

Defendant contends that Plaintiff cannot satisfy the third prong of the prima facie case because she had no experience performing the duties required in the Shipping Associate position that Amos held. In response, Plaintiff provides a chart, reproduced in modified form below, comparing a Shipping Associate's duties to a Customer Service Manager's duties. (Doc. No. 19 at 11–12). Plaintiff explains that the duties listed in the Customer Service Manager column also represent the experience Plaintiff gained during her nine-year tenure. (*See id.*).

| Customer Service Manager Description | Shipping Associate Description I | Shipping Associate Description II |
|---|---|---|
| Plaintiff describes the document containing this job description as "undated Customer Service Manager job description ca, 2007."[4] | Plaintiff describes the document containing this job description as "undated Shipping Associate job description, produced by Defendant during George Amos deposition."[5] | Plaintiff describes the document containing this job description as "Shipping Associate duties dated November 30, 2017."[6] |
| | Attend to RFQ's by distributing and presenting to owners for review/ comments. | |
| CPA Tariff officer – rate filings and overall monitoring of carrier compliance with FMC regulations at all times | Prepare and distribute rate quotations based on instructions from the Account Executive or inhouse tariff. | |
| | Act as liaison between external sales/ customer and Owners | |
| Register and taking bookings | Negotiate on securing bookings according to instructions and supervision of The Account Executive. | |
| | Monitor and follow up on previous rate offers. | Follow up direct with customers via phone/ email to secure business |
| | Cold calls via email or telephone. | Follow up direct with customers via phone/ email to secure business |
| Register and taking bookings | Monitor/track existing bookings. | |
| Distribute booking notes to customer and owner in accordance with freight agreement | Monitor and ensure bookings notes are issued correctly as quoted to customer and by Owners. | |
| | Prepare drafted sailing schedule for review and approval by the Account Executive. | |
| | Become familiar and operational with in-house Flagship system to collect revenue reports by voyage and register (input)/update bookings. | |
| | Check bookings lists for correctness. | |
| Cargo tracing | Assist Customer service desk if/when needed by Cargo tracing / Document tracing/ Booking update | |
| Issue and maintain statistical reports (Volumes, Revenues) for services under CPG control to commercial management | Assist on documentation related matters if/when Commercial management or Owners need to be involved. | |
| | Attend to requests by Operations and Port Captain pertaining to cargo/ bookings under the Westbound service umbrella. Prepare and update performance reports by customer and/or trade lane. | |
| | Ad hoc as requested by the Account Executive | Plus other tasks assigned by Commercial Manager |
| Issuing and distributing Dangerous Cargo Manifest | | |
| | | Manage Daily inquires worldwide; Turn inquiries via feedback from China and Poland; Manage all t/s via inquires worldwide[7] |

---

[4] *See* Doc. No. 19, Ex. B

Plaintiff also stated in her deposition that she had experience working for both Eastbound and Westbound services, admitting that although she started out in the Eastbound Sector, by the end of her employment she was predominantly working for the Westbound Sector. (Doc. No. 19, Ex. A at 19). Plaintiff further testified that although her title was Customer Service Manager, she had experience with the relevant computer system and booking Eastbound and Westbound business. (Doc. No. 19, Ex. A at 32). In fact, Plaintiff averred that she *trained* Amos in how to "use the computer system to do eastbound bookings." (*Id.*). Regardless of whether Defendant's assertion that the Shipping Associate position remained the same pre- and post-reduction in force is true, a side-by-side comparison of the Shipping Associate position description as of September 2018 and the description of Plaintiff's former duties as a Customer Service Manager indicates that a genuine issue of material fact remains concerning whether Plaintiff was qualified for the Shipping Associate position.

Moreover, Plaintiff provides the declaration of Mark Roberts, an employee who was promoted to Commercial Team Manager after the reorganization, in which Roberts states that he created a reorganization plan for Chipolbrok. (Doc. No. 15 Ex. F at ¶ 4). Roberts's plan proposed similar positions and was similar in structure to the plan that was eventually adopted by Chipolbrok, except that, as stated above, Robert's suggested plan retained Plaintiff instead of Amos as a Shipping Associate. (*Id.* at ¶ 8). The fact that someone who Chipolbrok promoted into a leadership role felt that Plaintiff was qualified for the post-reduction in force Shipping Associate position, but that a significantly younger, significantly less experienced employee was retained

---

[5] *See* Doc. No. 19, Ex. H. Amos's deposition took place on September 14, 2018. Defendant does not dispute the accuracy of this the two Shipping Associate job descriptions provided in this chart.
[6] *See* Doc. No. 19, Ex. G.
[7] In Plaintiff's chart, these last three duties were separated into three different cells. (Doc. No. 19 at 12).

instead satisfies the fourth prong of the prima facie case, at least at this summary judgment stage in the case.

Next, regarding the fourth element, Defendant argues that the Shipping Associate position was not a new position; Amos had the same duties before and after the reduction in force. (Doc. No. 18 at 10, 11). Defendant argues that since this position remained the same pre- and post-reduction in force, Plaintiff could not have been "replaced" by Amos, where Amos merely retained the position he held pre-reduction in force. As discussed above, Plaintiff provides a comparison of two different Shipping Associate job descriptions. The fact that two different job descriptions for the same job title exist, one of which is dated thirteen months after Plaintiff's termination, raises at least a genuine issue of material fact concerning whether the pre-and post-reduction in force Shipping Associate positions were actually the same, or whether the latter was a new position with the same title. At this stage, this evidence satisfies the fourth prong of the prima facie case because it demonstrates that a genuine issue of material fact exists regarding whether others (i.e., George Amos) who were not members of the protected class remained in similar positions (i.e., performed similar duties post-reduction in force) and/or that a genuine issue of material fact exists regarding whether Plaintiff was "otherwise discharged because of her age."

Plaintiff also suggests, and Defendant does not dispute, that Amos had three total years of experience in the industry (one with Chipolbrok) whereas Plaintiff had thirty years of experience, nine of which were with Chipolbrok. (Doc. No. 19 at 10). It is true, as Defendant points out, that two of the six other Westbound Sector employees whose employment was terminated were under forty years of age. Regardless, at the prima facie stage, the fact that any younger, less experienced employee avoided termination while the four older employees (including Harrison) did not, is enough to require Chipolbrok to articulate reasons for this result. *See King v. True Temper Sports,*

*Inc.*, No. 1:09CV168, 2011 WL 2224251, at \*3 (N.D. Miss. June 7, 2011). It could be argued that this result from the reduction in force "exude[s] that faint aroma of impropriety" regarding potential discrimination that is sufficient at the prima facie stage. *See Thornbrough*, 760 F.2d at 643–44 ("[W]hat is suspicious in reduction-in-force cases is that the employer fired a qualified, older employee but retained younger ones. If we focus not on why employees, in general, were discharged, as the district court did, but instead on why the plaintiff rather than another employee was discharged, the discharge of an older employee rather than a younger one is initially unexplained. Under these circumstances, requiring the employer to articulate reasons for his decision to fire the plaintiff is appropriate.").

### iii. Legitimate, Nondiscriminatory Rationale

Once Plaintiff establishes a prima facie case of age discrimination, the burden of production shifts to Defendant to articulate a legitimate, nondiscriminatory rationale for the layoffs. *See Burrell*, 482 F.3d at 411–12. Defendant states that it decided to end the Westbound services based on business justifications, specifically the sharp decline in bookings from 2014 to 2016. Defendant has provided evidence that Westbound services were no longer profitable and that, as a result, all Westbound Sector employees were terminated. Specifically, Defendant provides profit and loss statements from 2014 through 2016 demonstrating the steady decline in revenue from the Westbound Sector. Defendant also provides a document called summary of orders that demonstrates that the decline in relevant orders from 495 in 2014 to 42 in 2017. Defendant alleges that as a result, the entire Westbound Sector was laid off in October of 2016, and claims that age was not a determining factor in deciding who to keep and who to terminate. The only thing considered when determining who to lay off and who to keep was the particular sector (Eastbound or Westbound) for which the employee worked. Plaintiff does not dispute these

revenue losses or the decline in orders. (Doc. No. 18, Ex. K at 32:18-35:21). Defendant's proffered reasons for terminating Plaintiff constitute legitimate, nondiscriminatory rationales.

### iv.    Pretext

Since Defendant has articulated a legitimate, nondiscriminatory rationale behind its termination decision, the burden shifts back to Plaintiff to demonstrate that this articulated benign reason is merely a pretext for the true, discriminatory reason. *See Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). Plaintiff alleges that Defendant used Plaintiff's age as an improper motivating factor. (Doc. No. 19 at 14). Plaintiff advances a number of arguments to show pretext: first, Plaintiff offers evidence that during the course of her employment with Chipolbrok, she was subjected to at least three derogatory statements about her age. (Doc. No. 19, Ex. A at 44). Next, Plaintiff points to the circumstances of the other individuals who were terminated, arguing that while some of them were over forty years of age, others were transferred to other Chipolbrok branches in their home countries. Finally, Plaintiff proffers evidence that Amos, a twenty-seven year old individual with considerably less experience than Plaintiff, remained employed in a position which Plaintiff argues is substantially similar to the position she lost.

#### a.  Statements

A genuine issue of material fact remains with regard to certain statements allegedly made by Chipolbrok employees and co-Presidents about Plaintiff's age. As discussed above, in support of her first argument, Plaintiff offers the declaration of Clifford Kuhfeld, Plaintiff's former supervisor, who states that in 2015 he "had a conversation with Stella Ge [the Chinese co-President] during which Ms. Ge told [him] that she wanted to terminate Judy Harrison's employment. . . because Ms. Harrison was too old, had been sick, and was costing too much money on medical reimbursements." (Doc. No. 19, Ex. F). Kuhfeld also states that in September 2016,

nearly a year after he left Chipolbrok, he ran into Ge at a conference in which Ge told Kuhfeld that she "was going to terminate Ms. Harrison's employment because Ms. Harrison was too old and [was] costing Chipolbrok a lot of money on medical reimbursements." (*Id.*). In her deposition, Ge denies making any statements of this nature to Kuhfeld. (Doc. No. 19, Ex. C).

Plaintiff also points to two other comments that were made about her age during her time at Chipolbrok. First, Plaintiff claims that in 2013, Daniel Zhou, Chipolbrok's former Chinese co-President, told her that she should quit and give her job to a younger person. (Doc. No. 19, Ex. A, 44–45).[8] Plaintiff also contends that Captain Yang, who was not Plaintiff's superior in the company, made "three or four" comments indicating that he believed that she was too old to work. (*Id.* at 50–53).[9]

"Where a plaintiff offers remarks as circumstantial evidence alongside other alleged discriminatory conduct," the "plaintiff need only show (1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012) (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000)); *see also Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 349 (5th Cir. 2013) (applying the *Reed* test in a racial-discrimination suit); *Lay v. Singing River Health Sys.*, 694 F. App'x 248, 256 (5th Cir. 2017). The Fifth Circuit distinguishes this "more flexible two-part test" from the four-part *Brown* test used when a plaintiff cites remarks as direct evidence of discrimination. *Reed*, 701 F.3d at 441; *see also Hoffman v. Baylor Health Care Sys.*, No. 3:12–CV–3781–L, 2014 WL 772672, at *14 n.10 (N.D. Tex. Feb. 27, 2014). *Brown* is an age-discrimination case in which the

---

[8] Plaintiff also admits that she did not face any adverse employment actions immediately following Zhou's remark. (*Id.* at 49).
[9] Again, Plaintiff admits that she did not face any adverse employment actions immediately following Yang's remarks. (*Id.* at 53).

court set out the following four-part test: age-related remarks "may serve as sufficient evidence of age discrimination if the offered comments are: (1) age related; (2) proximate in time to the terminations; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue." *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996). Here because the Court finds that the statements are circumstantial evidence, the *Reed* test applies.

First, taking Kuhfeld's declaration as true, as this Court must at this stage, Ge's alleged comments indicate that she, if not Chipolbrok, had at least some animus toward Plaintiff's age and related medical expenses. While Defendant disputes whether the statement was made proximate to the termination,[10] the Court finds that Ge's statement meets both criteria set out in *Reed*.[11] Furthermore, Plaintiff testified that she told the then-current Polish co-President about the statement, and he told her that he could only protect her until November 1, 2016. (Doc. No. 19, Ex. A at 161). The alleged remarks, if true, evince some discriminatory animus on the part of a person who was primarily responsible for the challenged employment action. Under the *Reed* two-part test, Ge's alleged comments consequently have some tendency to show that Defendant's proffered explanation is a pretext meant to conceal discrimination against Plaintiff's in the protected age class.

---

[10] The parties dispute whether Ge's statement allegedly made in September 2016 at the shipping convention was proximate to her eventual termination in October of 2016. The Court finds that these dates are close enough in time to meet the standard set out in *Brown*. Moreover, construing the facts in the light most favorable to Plaintiff, the decision to fire Harrison was made in September of 2016 at the reorganization meeting, thereby making the statement even more proximate to the "employment decision at issue."

[11] Ge's statement would also meet the four criteria for direct evidentiary statements as described in *Brown*: (1) Ge's statement was age related; (2) it was proximate in time to the termination, as it was allegedly made at the time Chipolbrok decided to fire Harrison; (3) it was made by an individual with authority over Harrison's termination; and (4) was related to the employment decision at issue (Harrison's termination). *See* 82 F.3d at 655.

Next, neither Daniel Zhou nor Captain Yang's statements meet the two *Reed* criteria.[12] While the statements are age-related and may show animus, Plaintiff fails to show that Zhou or Yang were either "primarily responsible for the challenged employment action" or had "influence or leverage over the relevant decisionmaker." *Reed*, 701 F.3d at 441. It is true that when Zhou made the statement in 2013, he was the acting Chinese co-President, but Plaintiff provides no evidence that Zhou was "primarily responsible for" Plaintiff's eventual termination. (Doc. No. 19, Ex. 19 at 45). Similarly, Plaintiff has provided no evidence indicating that Yang's statement had any bearing on her eventual termination. Perhaps more pertinent, Plaintiff admits that Captain Yang had no authority to terminate her. (*Id.* at 53).

Accordingly, while Ge's statement demonstrates a genuine issue of material fact remains regarding whether Defendant's proffered explanation is a pretext, Zhou and Yang's statements do not.

### b. Circumstances of Other Employees

Next, Plaintiff provides evidence that six people were terminated (including Plaintiff) during the first round of employment terminations. Four were over forty years of age. Two more employees were terminated during the second round; one was forty-three, the other was thirty-six. (Doc. No. 18 at 7). In her deposition, Plaintiff stated that she does not believe that these employees were laid off because of their age, but also argues that these employees were technically not laid off, but were sent back to their home countries. Defendant argues that two of the employees who were terminated were under forty years of age, and that "[o]f the 11 employees still employed on the date Plaintiff was terminated, 4 were over the age of 40." (Doc. No. 18 at 22). Defendant denies

---

[12] Zhou and Yang's statements would also fail to meet the four *Brown* criteria; Plaintiff provides no evidence that Zhou's statement was made proximate in time to the termination (in fact, Plaintiff states that Zhou made the statement prior to 2013) and Plaintiff admits that Yang had no authority to terminate her employment.

"transferring" employees to the Chipolbrok branches in China or Poland. (Doc. No. 19, Ex. C at 31–38).

Courts treat such pattern-based evidence, even if it involves simple numbers, as statistical evidence. *See, e.g.*, *Crim v. Helfer*, No. 95-10415, 1996 WL 46811, at *2 (5th Cir. Jan. 16, 1996) (calling evidence "statistical evidence" where it showed that seven of the eight employees who were retained were under forty years old while two of the four employees who were not retained were over forty years old); *King*, 2011 WL 222425, at *4 (treating evidence as statistical evidence where it showed that two of the three laid-off supervisors were the oldest supervisors in the department).

"[A]lthough statistical data may occasionally establish pretext where it is combined with additional evidence, it is generally insufficient to raise a genuine issue of material fact in cases where a plaintiff puts forward no additional evidence that a specific nondiscriminatory reason is pretextual." *Jackson*, 619 F.3d at 468 (citing *Deloach v. Delchamps, Inc.*, 897 F.2d 815, 820 (5th Cir. 1990)); *see also Walther v. Lone Star Gas Co.*, 977 F.2d 161, 162 (5th Cir. 1992) (stating that "proof of pretext, hence of discriminatory *intent*, by statistics *alone* would be a challenging endeavor"). "[S]tatistical evidence usually cannot rebut the employer's articulated nondiscriminatory reasons." *E.E.O.C. v. Tex. Instruments*, 100 F.3d at 1184.

Nevertheless, "gross statistical disparities resulting from a reduction in force or similar evidence may be probative of discriminatory intent, motive or purpose." *Walther*, 977 F.2d at 162. Statistics "may be probative of pretext in limited circumstances." *E.E.O.C. v. Tex. Instruments*, 100 F.3d at 1185. "The probative value of statistical evidence ultimately depends on all the surrounding facts, circumstances, and other evidence of discrimination." *Id.* District courts within the Fifth Circuit have often accorded little weight to statistical evidence based on relatively small

sample sizes in employment-discrimination cases. *See King*, 2011 WL 2224251, at *4 (finding that "the small statistical sample offered" by the plaintiff, namely that two of the three laid-off supervisors were the oldest supervisors in the department, "is simply insufficient [to] allow an inference of age discrimination"); *Jefferson v. MillerCoors, LLC*, No. 4:09-CV-363-A, 2010 WL 2670806, at *6–7 (N.D. Tex. July 2, 2010) (refusing to treat the alleged fact that all ten laid-off employees, out of a pool of forty, were over forty years old and the alleged fact that eight were over sixty years old as evidence of pretext and stating that "[r]aw numbers or statistics such as those presented by[]plaintiff, devoid of context, are insufficient to prove pretext absent additional evidence of pretext").

On the other hand, courts have occasionally accepted statistics based on relatively small sample sizes as probative of pretext. *See Deal v. Louisiana*, No. 11-743-JJB, 2013 WL 3423116, at *4–5 (M.D. La. July 8, 2013) (ruling that statistical evidence allowed an inference of pretext where it showed that sixteen of seventeen employees terminated on a particular date were over forty years old, even though that date was not the date on which plaintiff was terminated); *Taylor v. Albemarle Corp.*, No. 04-398-JVP-DLD, 2007 WL 9700753, at *10–11 (M.D. La. Feb. 13, 2007) (finding that the plaintiff had sufficiently shown pretext based on evidence that, out of a pool of fifty-five employees, all six terminated employees were over forty years old and none of the seventeen employees under forty years old were terminated).

In this case, four of the six employees whom Chipolbrok America terminated in the first round of lay-offs were over the age of forty, and one of the two employees terminated in the second round of lay-offs was over forty. Of the nine employees remaining after both lay-offs, only two of them were over forty.[13] In total, this means that of the seventeen employees in question, five of

---

[13] One co-President was thirty-eight, the other was forty-seven. (Doc. No. 19, Ex. 1 at Ans. 3). They are not included in the count of the nine remaining employees referenced in the text.

them had their employment terminated and were over forty years of age. This does not equate to a "gross statistical disparit[y]," and it does not provide a large enough sample size for the Court to infer discrimination on the basis of raw numbers or statistics alone.[14] *See Walther*, 977 F.2d at 162; *contra Deal*, 2013 WL 3423116, at \*4–5.

Raw numbers or statistics alone, while perhaps having some probative value, are not sufficient in and of themselves to create a fact issue around whether Defendant's nondiscriminatory rationale is pretextual. *See E.E.O.C. v. Tex. Instruments*, 100 F.3d at 1185. As such, the probative value, if any, of the decision to terminate employees in the protected age class will "ultimately depend[] on all the surrounding facts, circumstances, and other evidence of discrimination." *See id.*

### c. Shipping Associate Position Descriptions

Plaintiff argues that Defendant's contention that she was unqualified for the Shipping Associate position is also pretextual. As discussed above, Plaintiff demonstrates that a genuine issue of material fact exists regarding whether she was qualified for the Shipping Associate position as described in the document produced by Amos during his deposition. Defendant contends that in October of 2016, Amos was the only employee qualified to be in the Shipping Associate position, and that "[b]oth before and after the reorganization, Mr. Amos had the same duties and responsibilities." (Doc. No. 18 at 10–11) ("As a Shipping Associate, Mr. Amos handled duties that Plaintiff never did and did not have the experience or qualifications to do."). In other words, Defendant argues that Amos kept the same job throughout the reorganization and did not take a position that would have otherwise been available to Plaintiff. (*Id.*). In response, Plaintiff points to the existence of various Shipping Associate job descriptions, which she argues

---

[14] In fact in the instant case, given the small sample size, this Court could also imagine a scenario where this particular statistical evidence could actually support either side's position.

demonstrates that the position changed after Chipolbrok reorganized. The Shipping Associate description dated November of 2017 lists several duties including "Follow up direct with customers via phone/email to secure business; other tasks assigned by Commercial Manager Manage Daily inquires worldwide; Turn inquiries via feedback from China and Poland; Manage all t/s via inquires worldwide" (none of which overlap with the job description for Plaintiff's former position with Chipolbrok). A different Shipping Associate job description was produced by Amos during his deposition, is undated, and lists several duties that a fact-finder could hold are substantially similar to the duties expected of Plaintiff in her former position. The Court finds that the various job descriptions raise at least a genuine issue of material fact regarding whether the Shipping Associate position changed post-reduction in force, and consequently a fact issue exists as to whether Plaintiff was qualified for the position.

### v. The Totality of the Evidence

Viewing the evidence as a whole, taking all proper summary judgment evidence as true, and drawing all reasonable inferences in favor of Plaintiff, the Court finds that Defendant has failed to show as a matter of law that there is no triable issue of fact regarding ADEA discrimination. Overall, the Court finds that Plaintiff has produced enough evidence to merit trying their age discrimination case.

## C. TCHRA Claims

The Supreme Court of Texas has noted the parallels between the TCHRA in an age-discrimination case and federal anti-discrimination statutes:

> Under the TCHRA, "an employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer . . . discharges an individual or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment." Section 21.051 is effectively identical to Title VII, its federal equivalent, except that Title VII does not protect against age and disability

> discrimination. (Those forms of discrimination are addressed in separate statutes.)
> Because one of the purposes of the TCHRA is to "provide for the execution of the
> policies of Title VII of the Civil Rights Act of 1964," we have consistently held
> that those analogous federal statutes and the cases interpreting them guide our
> reading of the TCHRA.

*Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633–34 (Tex. 2012) (footnotes and

internal citations omitted). Just as the Court described above concerning the ADEA analysis, where

a plaintiff relies on circumstantial evidence, Texas courts apply the *McDonnell Douglas* burden-

shifting framework to age-discrimination claims under the TCHRA. *See id.* "Importantly, the

TCHRA and the ADEA involve a different causation inquiry at the third stage of the *McDonnell*

*Douglas* analysis. Under the ADEA, a plaintiff must prove that age was the 'but for' cause of the

challenged adverse employment action. . . . Under the TCHRA, however, a plaintiff need only

show that age was a 'motivating factor' in the defendant's decision." *Reed v. Neopost USA, Inc.*,

701 F.3d 434, 440–41 (5th Cir. 2012) (internal citations omitted).

Above, the Court described the evidence Plaintiff presented, demonstrating that a genuine

issue of material fact remains regarding her ADEA claim. The Court finds that the same outcome

is appropriate for Plaintiff's TCHRA claim for the reasons described above (and in light of the less

onerous causation requirement).

## IV.     Conclusion

For the reasons stated above, the Court denies Defendant's Motion for Summary Judgment.

Signed at Houston, Texas, on this 19th day of April, 2019.

ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE

23